The Chancellor.
William Davis and Catharine his wife,, on the seventh of August, in the year eighteen hundred and fifteen, made and executed a mortgage to William Wikoff and. Elias Conover, to secure the payment of a bond for four thousand six hundred and sixty-six dollars and sixty-six cents, in two equal payments, at a short date after its execution. Elias Conover, one of the mortgagees, died first; afterwards William Wikoff, the remaining mortgagee, died, intestate, and the complainant has filed his bill as the administrator of William Wikoff, the surviving mortgagee, to foreclose the mortgage, and for a sale of the lands therein mentioned. William Davis, the martgagor, also died intestate, and his administrators, under an order of the orphans’ court, sold the mortgaged premises at public sale, on the sixth of September, eighteen hundred and twenty-eight, to Dr. John T. Woodhull, of the county of Monmouth..
*225 Dr. Woodhull became the purchaser, subject to the incumbrance created by the complainant’s mortgage, and with the understanding that lie should pay it off. After his purchase, he sold the property in parcels to the following persons, and at the following times, and received from all the purchasers the full consideration for the parts so sold to them, they trusting that he would pay ofí and remove the existing incumbrance without subjecting them to any difficulty.
He sold on the twentieth of October, eighteen hundred and thirty-one, to Walter W. Hart, forty-eight acres and fifty hundredths ; on the twenty-sixth of September, eighteen hundred and thirty-two, to Samuel Perrine, the main portion of the farm, with certain reservations to the grantor; on the fifth of October, eighteen hundred and thirty-two, to William D. Davis and Eichard Davis, a part of the land so reserved, consisting of twenty-seven acres and thirty-eight hundredths of cleared land; and on the thirteenth of May, eighteen hundred and thirty-five, to six different persons, in distinct lots, the balance of the mortgaged premises so reserved as aforesaid, consisting of wood land : these lots are now owned by William Hartshorn and Stephen Patterson.
The complainant’s mortgage is not disjnited, except as to the amount due upon it, nor is it denied that it constitutes a lien, and may resort to all the property covered by it for payment. The only question is, as to the order in which the property must be sold. Walter W. Hart, the first purchaser, insists upon the rule, that the portion first sold shall be the last resorted to for payment of the mortgage. Perrin and Davis insists upon the same rule, hut frankly admits that their respective deeds, though dated at different times, were executed and delivered at the same time, and should be bound to bear a rateable proportion towards discharging the mortgage, after exhausting the wood lot held by Hartsliorne and Patterson. Hartshorne and Patterson insist, under the circumstances of this case, that all the property should contribute towards paying off the mortgage, according to the value of the several shares. While the complainant stands in *226 different as to the order of sale, being entitled to his money from all the lands embraced in the mortgage.
Every question raised in this case will be found settled in this court, as I think, in the case of Shannon v. Marselis and others, Saxton, 413. By that case it is declared, that if a mortgagor sell the land covered by the mortgage, in different parcels, and at different times, that portion of the land last sold must first be applied in discharge of the mortgage. If the land last sold will not pay off the incumbrance, then that portion sold next preceding it must be disposed of, and so on, reversing the order in which the mortgagor conveyed the property. This is the undeniable rule on all sales made directly by the mortgagor. But this case, if I understand it aright, goes farther, and decides more. One of the parcels sold by the mortgagor, had been again sold by the purchaser in parcels to different persons, and at different times ; and it was held that among these there Were equities, and that that portion should be sold first which was the last conveyed.
The distinction set up in the present case is, that the sale of the land into parcels was not made by Davis, the mortgagor, but: by Woodhull, who became the purchaser of the whole farm, at the administrators’ sale. This difference is supposed to consist in this, that in the one case the mortgagor is personally liable for the debt to the mortgagee, and not in the other. Chancellor Williamson, in the case of the Executors of Clymer v James and others, does indeed express a doubt as to carrying the principle farther than to sales made by the mortgagor, but it is a mere suggestion at the close of a long opinion on other matters, without any case cited to support it, and he does not profess to have made up any opinion on that point himself, but reserves it for consideration, whenever the case comes up for final decree. That ease was referred to James S. Green, esquire, as master, who reported that the land ought to be sold on the principles established in the case from Saxton, 413, before referred to, and the chancellor, (Seeley,) decreed in conformity with the master’s report. What chancellor Williamson would *227 have done, had the case been finally decided by him, it is impossible to say, but the decree as made, did not carry out his ■suggestion, and was acquiesced in, as I learn, without an appeal being taken. In New-York, the subject has been repeatedly considered by different chancellors, and without any such distinction being acknowledged: 1 John. Ch. 447; 5 John. Ch. 241; 2 Paige, 300. In the last case, chancellor Walworth uses this comprehensive language: “ Where lands, belonging to ■ several persons, are covered by a mortgage given by the person fr-va whom they all derive their titles, the lands last sold by him are first liable to satisfy the incumbrance, and the several parcels must be sold by the master in the inverse order of their alienation.” No difference is here taken, whether the owners derive title directly from the mortgagor or not, nor have I been furnished with any decision that does. All these cases must, of course, refer only to such purchasers as buy on the same terms; for if it appear that one bought with the promise to pay ©ff the whole incumbrance, and another without any such understanding, a court of equity would enforce so plain an agreement. I confess I do not perceive the force of the reason upon which the distinction is taken, between a sale made directly by the mortgagor, or by a purchaser from the mortgagor. It is not only because the mortgagor is personally liable for the money, that the rule is adopted, but because the property is bound as security for the debt, and in case a part is sold, the residue remaining ’’u the hands of the mortgagor should first be applied. Had Hr. Woodhull never sold any part of this farm, except the forty-eight acres to Hart, should not the residue still belonging to him have been first applied to pay off the mortgage ? He had purchased, subject to the mortgage, and promised to pay it off, and then sold to Hart and received his full consideration. If this be so, then upon what principle can the rights of Hart be affected by any future disposition of the property made by Dr. Woodhull ? Neither case can be viewed in the light of a rent charge, growing out of the land itself. The debt in either case is a personal obligation on the part of the debtor, and the charge on *228 the land is only as a security for the debt. But if tbe proposition be true, that the personal liability of tbe mortgagor to pay tbe debt, makes a difference, tbe objection should not prevail in this case, for Dr. Woodbull was actually bound to pay this, debt: be purchased tbe farm subject to it, and promised to discharge tbe incumbrance.
I am therefore of opinion, that tbe rule as settled in this-court, must obtain in tbe present case, and that the portion of tbe farm now owned by Hartsborne and Patterson must first be. sold, tbe part conveyed to Perrine and tbe Davises under their answers must next be sold, and tbe portion conveyed to Hart must be sold last.
There is one other question made in this case, touching certain payments alleged to have been made on tbe mortgage, by Mr. Woodbull; this would more properly have come up on the-master’s report, and in fact tbe whole case would have been better presented at tbe coming in of bis report. I think Dr. Woodbull a competent witness in respect to bis payments, for as to some of tbe defendants, by whom be is offered, be has-been fully released, and be is so involved in tbe whole proceeding as to be balanced in bis interest. If tbe payment be applied to this mortgage, be is bable for so much more on bis own obligation in tbe bands of tbe complainant, and whether applied to tbe one or tbe other, it can make no difference to him. The-, six hundred dollars is fully shown by him to have been paid on. this mortgage, and must, I think, be a credit to that amount. As to tbe other credits claimed, I do not think, from bis evidence, they ever were so applied. I leave tbe question open,, as I should, to tbe master, to take tbe account in bis discretion directing him to use tbe deposition of Dr. Woodbull as a competent witness in tbe cause.
When tbe master makes bis report, if any of tbe parties see-ground for excepting to it, they will be at liberty to do so; and if upon drawing up tbe final decree, there shall be any embarrassment in its detail to meet tbe views here expressed, it will, be then settled.
Reference to a master.
Cited in Weatherby v. Slack, 1 C. E. Gr., 491; Hoy v. Bramhall, 4 C. E. Gr. 570.